# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

RICARDO CAMPODONICO, individually and on behalf of all others similarly situated,

    *Plaintiff*,

v.

RESORTS WORLD LAS VEGAS, LLC,

    *Defendant*.

Case No. 23-CV-_____

## NOTICE OF REMOVAL

Defendant Resorts World Las Vegas, LLC ("Defendant") hereby gives notice of removal of the above-captioned action from the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida to the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1446. In support thereof, Defendant respectfully states as follows:

### PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL

1.    This action was commenced on or about March 3, 2023 by Ricardo Campodonico ("Plaintiff") by the filing of a complaint alleging purported claims against Defendant under the Florida Telephone Solicitation Act (the "FTSA"), Fla. Stat. § 501.059(8)(a), in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, Case Number 2023-003668-CA-01 (hereafter, the "State Court Action"). As discussed in detail below, Plaintiff's claims against Defendant are based on multiple alleged "telephonic sales calls" (specifically, text messages) that Plaintiff purportedly received on his cellular phone without his consent, in alleged violation of the FTSA.

2.    Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the complaint filed against Defendant in the State Court Action (hereafter, the "Complaint" or "Compl.") is attached to this Notice as **Exhibit A**. True and correct copies of all other filings in the State Court Action to date are attached to this Notice as **Exhibit B**.

3. A true and correct copy of the Register of Actions from the State Court Action is attached to this Notice as **Exhibit C**.

4. Defendant was purportedly personally served with copies of the Summons and Complaint on March 14, 2023. A true and correct copy of the Return of Service filed in the State Court Action is attached hereto as **Exhibit D**.

5. This Notice of Removal, filed within 30 days from when Defendant was purportedly served with process, is therefore timely pursuant to 28 U.S.C. § 1446(b).

## JOINDER

6. No other defendants have been named in the State Court Action, and therefore, no joinder of additional defendants to this removal is necessary.

## RELEVANT ALLEGATIONS

7. Plaintiff's Complaint seeks relief from Defendant, on behalf of himself and a putative class of similarly-situated persons "in Florida" for allegedly making (or causing others) to make multiple unlawful "telephonic sales calls" (in particular, supposed "automated text messages") without obtaining the "prior express written consent" of Plaintiff and the putative class members, in purported violation of the FTSA. Compl. ¶¶ 1-5, 9, 11, 13, 19, 29-32, 34, 35, 38, 43-49.

8. Specifically, Plaintiff alleges, *inter alia*, that: (i) "Defendant has placed telephonic sales calls to telephone numbers belonging to thousands of consumers listed throughout Florida" in purported violation of the FTSA; (ii) the exact number of putative class members is unknown, but believed to "number in the several thousands, if not more"; (iii) "the aggregate damages sustained by [Plaintiff and] the [putative] Class may be in the millions of dollars"; (iv) "Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the [putative] Class members" in this case; and (v) "Plaintiff's claims are typical of the claims of the [putative] Class members, as

they are all based on the same factual and legal theories." *Id.* ¶¶ 33, 34, 38, 40, 48.

9. Plaintiff further alleges that he received "numerous" text messages on his cell phone in purported violation of the FTSA between May 6, 2022 and January 12, 2023, and provides a screenshot in his Complaint, suggesting he received at least three or four such messages. *Id.* ¶ 11.

10. Plaintiff further alleges the at-issue calls caused him and the putative class members various forms of "harm" including but not limited to "inconvenience, invasion of privacy, aggravation, [and] annoyance." *Id*. ¶¶ 4, 31.[1] In this regard, the Complaint seeks "damages" for Plaintiff and each member of the putative class (specifically, a "minimum of $500 in damages for each violation" and possibly "millions of dollars" in the aggregate), injunctive relief, and "any other available legal or equitable remedies." Compl. ¶¶ 4, 5, 31, 40, 49, Prayer. In addition to actual damages, the FTSA permits statutory damages of $500 per violation (*i.e.*, call), which may be trebled for willful or knowing violations up to $1,500 per violation. *See* Fla. Stat. §§ 501.059(10)(a)-(b).

11. Defendant disputes all of Plaintiff's allegations, believes the Complaint lacks merit and fails to state a claim for relief, and denies Plaintiff or the putative class have been harmed in any way or that this case is capable of or appropriate for class treatment. By seeking removal, therefore, Defendant does not waive any arguments or defenses with respect to the Complaint or otherwise in this matter (including but not limited to jurisdictional defenses or any contractual rights to compel

---

[1] Though Defendant is under no obligation to concede, let alone plead or prove, Plaintiff's Article III standing at this stage (*see* discussion at fn. 2, *infra*), and certainly does not concede that issue here, courts have held that such "harm" allegations are generally sufficient for Article III standing. *See, e.g., Farhat v. Unique Healthcare Sys., LLC*, 2022 WL 597783, at *1 (M.D. Fla. Jan. 11, 2022) (analyzing *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019) and holding that, "[a]lthough a single text message cannot confer standing," "four text messages [may] plausibly confer standing and certainly warrant an opportunity to develop the record"); *Teblum v. Physician Compassionate Care LLC*, 2020 WL 10502588, at *6 (M.D. Fla. Mar. 26, 2020) (holding that two texts was sufficient for Article III standing for a TCPA claim, noting: "In *Salcedo*, the Court was particularly concerned about the harm created by an invasion of privacy that intrudes on the sanctity of the home."); *see also Evans v. Ocwen Loan Servicing, LLC,* 2022 WL 17259718, at *1 (11th Cir. Nov. 29, 2022) (holding that "more than one call is a concrete injury that confers standing" under Article III).

arbitration). As demonstrated below, however, this Court has jurisdiction over Plaintiff's claim and removal of this action to this Court is proper based on the pled allegations appearing on face of the Complaint. *See, e.g., McDaniel v. Fifth Third Bank*, 568 F.App'x. 729, 731 (11th Cir. 2014) (accepting Plaintiff's allegations as true for purposes of jurisdictional analysis); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014); *Baldwin v. Boise Paper Holdings, L.L.C.*, 631 F.App'x 831, 833 (11th Cir. 2015). *See also Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010) ("[C]ourts may use ... common sense in determining whether the case stated in the complaint meets federal jurisdictional requirements.").

## BASIS FOR FEDERAL JURISDICTION AND REMOVAL (CAFA)

12. This Court has proper federal jurisdiction over this case pursuant to the Class Action Fairness Act ("CAFA"), specifically 28 U.S.C. § 1332(d)(2) & (5), which together provide, *inter alia*, that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which … any member of a class of plaintiffs is a citizen of a State different from any defendant…" and require that the proposed class must contain at least 100 persons. *See also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (summarizing CAFA removal requirements); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1327 (11th Cir. 2006), *abrogated on other grounds by Dudley v. Eli Lilly & Co.*, 778 F.3d 909 (11th Cir. 2014) (same). As shown below, this case readily meets all of these requirements and, therefore, removal under CAFA is proper.

13. **First**, the State Court Action is a "class action" under 28 U.S.C. § 1332(d)(2), because Plaintiff seeks to represent a class of similarly situated individuals pursuant to Florida Rules of Civil Procedure 1.220(b)(2) and (b)(3). *See, e.g.,* Compl. ¶¶ 1, 32-41; *see also Senger Bros. Nursery, Inc. v. E.I. Dupont de Nemours & Co.*, 184 F.R.D. 674, 682 (M.D. Fla. 1999) ("Florida

Rule of Civil Procedure 1.220 is patterned after Federal Rule of Civil Procedure 23."). Thus, the first CAFA requirement is met.

14. **Second**, there is minimal diversity between Plaintiff and members of the putative class, on the one hand, and Defendant, on the other. *See, e.g., Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 911-12 (11th Cir. 2014) (minimal diversity met for CAFA where "any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant"); *Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1194, n.24 (11th Cir. 2007) (for minimal diversity, "only one member of the plaintiff class—named or unnamed—must be diverse from any one defendant") (citing 28 U.S.C. § 1332(d)(2)). In this regard, the CAFA minimal diversity requirement is easily met here because Plaintiff alleges that, *inter alia*: (a) he has a phone number with a Florida (305) area code; (b) he received the alleged text messages "while residing in and physically present in" Florida; and (c) Defendant is incorporated in Delaware with its principal place of business in Las Vegas, Nevada. Compl. ¶¶ 6-7, 9. *See also* Declaration of Gerald Gardner, attached hereto as **Exhibit E**, at ¶¶ 2-5 (discussing Defendant's corporate structure). Consequently, the second CAFA removal requirement is met.

15. **Third**, the plausible class number and amount in controversy well exceed the requisite minimums under CAFA based on the face of Plaintiff's Complaint alone. *See, e.g., Roe,* 613 F.3d at 1061-1062 ("[C]ourts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements" and may make "reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable."); *Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1319 (11th Cir. 2001) (allowing district courts to consider whether it is "facially apparent" from a complaint that the amount in controversy is met); *Fox v. Ritz-Carlton*

*Hotel Co., L.L.C.*, 977 F.3d 1039, 1045 (11th Cir. 2020) ("'If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction.'") (quoting *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1122 n.8 (11th Cir. 2010)). In this regard, and as noted above, Plaintiff seeks a minimum of $500.00 for each violation under the FTSA, and alleges *inter alia* that: (a) Defendant made or caused to be made "telephonic sales calls" to his cell phone and to the cellphones of "thousands" of putative class members in purported violation of the FTSA; (b) the potential class members "number in the several thousands, if not more"; (c) "the aggregate damages sustained by [Plaintiff and] the [putative] Class may be in the millions of dollars"; (d) Defendant "knowingly" violated the FTSA for treble statutory damages purposes; and (e) his pled claim (*i.e.,* that he allegedly received "numerous"—at least 3 or 4, per the screenshot provided—"telephonic sales calls" that were "knowingly" made by or behalf of Defendant in violation of the FTSA) is "typical" of the putative class members' claims. Compl. ¶¶ 11, 33, 34, 38, 40, 48. As shown below, these pled allegations indicate that the number of potential class members and possible amount in controversy in this case exceed the CAFA minimums above.

16. For example, conservatively assuming that "several thousands" of putative class members (as Plaintiff alleges) means at least 2,000 persons are possibly in the putative class and possibly as many as 3,000 persons ("if not more" according to Plaintiff) could be in the class, the potential number of class members in this case easily exceeds the CAFA minimum threshold of 100. *See* 28 U.S.C. § 1332(d)(5); *see also* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "several" as meaning "more than one or two but not a lot"); *Laboratoires Perouse, S.A.S. v. W.L. Gore & Assocs., Inc.*, 528 F. Supp. 2d 362, 390 (S.D.N.Y. 2007) (explaining that "several" means "more than two"); *Barrett v. C.O. Matters*, 2015 WL 5881602, at *9, n.9 (M.D. Pa. Sept. 30, 2015) ("Although the word 'several' may sometimes be used to mean 'more than one,' it is typically

defined as 'more than two.'") (citing, *inter alia*, *Laboratoires Perouse* and BLACK'S, *supra*).

17.  Further, based on the allegations in the Complaint and reasonable deductions and inferences to be drawn thereon, the alleged amount in controversy in this case exceeds $5,000,000. *See Roe,* 613 F.3d at 1061-1062; *Williams,* 269 F.3d at 1319; *Fox,* 977 F.3d at 1045.[2] For example, as noted above, Plaintiff alleges that (1) Defendant used automated technology to unlawfully make multiple "telephonic sales calls" to him and to "thousands"—or, rather "several thousands, if not more"—of putative class members and "knowingly" violated the FTSA (*i.e.,* he seeks treble damages ), and (2) potentially "millions of dollars" in damages were sustained by him and the putative class members. Thus, conservatively estimating that (a) each of the putative class members received multiple violative "telephonic sales calls" as Plaintiff allegedly did (*i.e.*, that Plaintiff's claims that he received 3 or 4 unlawful texts are truly "typical" of the putative class), and (b) each putative class member would be entitled to up to $1,500 in trebled statutory damages under the FTSA for each of these alleged "knowing" violations, it is plausible that the amount in controversy as

---

[2] Defendant does not concede (and indeed disputes) that Plaintiff or any putative class member is entitled to recover any damages. And, as noted above, Defendant is not required to allege or show in this Notice that Plaintiff or anyone is entitled to (or could) recover damages or has suffered any injury for present purposes. *See, e.g., Gonzalez v. TCR Sports Broad. Holding, LLP,* 2018 WL 4292018, at *2 (S.D. Fla. Sept. 10, 2018) ("Before the Court now is only the argument that Defendants were required to allege Plaintiff's standing in their notice of removal. That is clearly not what the law requires.") (citing, *inter alia, Dart Cherokee*); *Navtech US Surveyors USSA Inc. v. Boat/Us Inc.,* 2019 WL 3219667, at *2 (M.D. Fla. July 17, 2019) ("Although standing is a jurisdictional issue, it differs from subject matter jurisdiction needed for removal. Original jurisdiction like diversity or federal question jurisdiction governs removal under 28 U.S.C. § 1441…. And § 1441 does not require proof of standing" in order to remove.) (internal citations omitted); *Anderson v. Witco Life Ins.* Co., 943 F.3d 917, 925 (11th Cir. 2019) ("A defendant seeking to remove a case to federal court must file a notice of removal that includes 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'"); *Mangano v. Garden Fresh Rest. Corp.*, 2015 WL 5953346, at *1 (M.D. Fla. Oct. 13, 2015) ("A Notice of Removal must plausibly allege the jurisdictional amount, not prove the amount."); *Dudley v. Eli Lilly & Co.,* 778 F.3d 909, 913 (11th Cir. 2014) ("'[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it.' [] Moreover, at the jurisdictional stage, 'the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover.'") (quoting *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 751, 754 (11th Cir. 2010)).

alleged in this Complaint exceeds the CAFA minimum threshold (*i.e.*, a minimum of 2,000 putative class members, multiplied by at least 3 calls/texts each, multiplied by $3,000 per class in trebled damages equals **$18 million**). If there are truly "several thousands, if not more" putative class members as Plaintiff alleges (*i.e.,* 3,000 class members, and possibly "more"), that would only increase the amount in controversy in this case exponentially (and quite considerably). Courts in the Eleventh Circuit and elsewhere routinely calculate the amount in controversy for removal purposes in this fashion. *See, e.g., Doss v. Am. Fam. Home Ins. Co.*, 47 F. Supp. 3d 836, 840 (W.D. Ark. 2014) ("Using the named Plaintiffs as 'typical' class members and multiplying their claims by the number of persons estimated in a class is precisely how courts generally determine the estimated amount in controversy" under CAFA.); *Torres v. Countrywide Home Loans, Inc.*, 2014 WL 3742141, at *2 (S.D. Fla. July 29, 2014) (calculating amount in controversy under CAFA in this manner, holding that "if every member of the proposed class has a claim worth the same amount as Plaintiff's, the amount in controversy is easily satisfied"); *Bayberry Lakes Homeowners Ass'n, Inc. v. Boeneman*, 2018 WL 6680993, at *1–2 (M.D. Fla. Sept. 28, 2018) (concluding multiplying the amount of damages of one plaintiff across putative class shows the damages meet the CAFA jurisdictional threshold) (citing *Pretka*, 608 F.3d at 769);[3] *Bankhead v. Castle Parking Sols., LLC*, 2017 WL

---

[3] Defendant acknowledges that, in *Pretka*, the Eleventh Circuit held "[t]he typicality element of a class action, by itself, does not allow us to infer that the *amounts* of the named plaintiffs' claims are similar to those of other class members." 608 F.3d at 769 (emphasis in original). Here, the Court need not infer any amounts and need only look to the Complaint. Indeed, according to the Complaint, each putative class member would be entitled to $500 or $1,500 per alleged call, would had to have received at least one such call be in the class, and likely received more than one call (*i.e.,* "telephonic sales calls"). *See also Schaefer v. Seattle Serv. Bureau, Inc.,* 2015 WL 6746614, at *3 (M.D. Fla. Nov. 5, 2015) (stating that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; the notice need not contain evidentiary submissions."); *Napoli v. HSBC Mortg. Servs. Inc.,* 2012 WL 3715936, at *2 (D.N.J. Aug. 27, 2012) ("Because Plaintiffs' claims are alleged to be typical of the class, it is reasonable for this Court to simply multiply their purported damages amount by the number of foreclosures alleged in the Complaint.") (collecting cases); *Alper v. Select Portfolio Servicing, Inc*., 2019 WL 3281129, at *3 (D. Mass. July 19, 2019) (ruling similarly); *In re Blackbaud, Inc*., 2021 WL 1940581, at *5 (D.S.C. May 14, 2021) (same).

10562976, at *3 (N.D. Ga. Dec. 1, 2017) (determining amount in controversy based on allegations in the complaint alone, using plaintiff's estimates regarding damages and potential class size as a "base amount"); *Scott v. Ing Clarion Partners, LLC*, 2006 WL 3191184, at *4 (N.D. Ga. Oct. 31, 2006), *aff'd*, 262 F. App'x 983 (11th Cir. 2008) (calculating the amount in controversy for the class by multiplying amount of plaintiff's alleged damages by size of class). Therefore, the third and final CAFA requirement is satisfied in this case.

18. Given the foregoing, all three of the CAFA removal requirements are met in this case and, as such, removal to this Court is proper under CAFA.

## VENUE

19. Venue is proper in this District Court pursuant to 28 U.S.C. §1441(a), because this action was brought in the Eleventh Judicial Circuit Court in and for Miami-Dade, Florida, which is in the same District as the United States District Court for the Southern District of Florida.

20. Defendant hereby reserves all rights to assert any available defense or affirmative matter, including, without limitation, motions to dismiss pursuant to Fed. R. Civ. P. 12, the right to move to compel arbitration, as well as the right to amend or supplement this Notice of Removal.

## CONCLUSION

21. Defendant, having satisfied all requirements for removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, respectfully submits this Notice of Removal, requests that the State Court Action be removed to this Court, and respectfully requests that the Court assume full jurisdiction over the case herein as provided by law.

WHEREFORE, Defendant respectfully removes this civil action to this Court.

Dated:  April 12, 2023                               Respectfully Submitted,

**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: (305) 374-0440

By: *s/ Yaniv Adar*
Josh A. Migdal, Esq.
Florida Bar No. 19136
josh@markmigdal.com
Yaniv Adar, Esq.
Florida Bar No. 63804
yaniv@markmigdal.com
Annie D. Rosenthal, Esq.
Florida Bar No. 1031335
annie@markmigdal.com
eservice@markmigdal.com

*Attorneys for Defendant*

- 11 -

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically on the Court's CM/ECF docket on April 12, 2023, which served same electronically upon all counsel of record.

/s/ Yaniv Adar
Yaniv Adar

- 11 -